```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ORLANDO A. HERNANDEZ,<br><br>      *Plaintiff*,<br><br>  v.<br><br>TOWNSHIP OF LYNDHURST, et al.,<br><br>      *Defendants*. | No. 23-cv-01272 (MEF)(CLW)<br><br>**OPINION and ORDER** |

**Table of Contents**

**I.**   **Background**
    **A.**   **The Allegations**
    **B.**   **The Lawsuit**
    **C.**   **The Motion**
**II.**  **Absolute Immunity**
    **A.**   **Federal Claims**
        **1.**   **Analysis**
        **2.**   **Case Law**
    **B.**   **The State Claim**
**III.** **"Person"**
**IV.**  **Defects in the Complaint**
**V.**   **Conclusion**

                      \*   \*   \*

After his criminal conviction was reversed on appeal, a man asked for the money seized from him when he was first arrested; the prosecutor's office said no.

The man sued, alleging violations of civil rights laws.

The prosecutor's office now moves to dismiss.

The motion is denied.

\*   \*   \*

**I.   Background**

   **A.   The Allegations**

The allegations as relevant for now are as follows.

In 2015, municipal police officers[1] arrested a man.[2]  See State v. Hernandez, 2021 WL 5872883, at \*1 (N.J. Super. Ct. App. Div. Dec. 13, 2021); First Amended Complaint ("Complaint") ¶ 82.  The gist: he had violated a state narcotics law, as well as certain traffic laws.  See id. at ¶ 82.

When he was arrested, the man had cash on him.  See id. at ¶ 86.  It was seized.  See id. at ¶ 90.

The man was charged, tried, and convicted.  On appeal, his conviction was reversed.  See Hernandez, 2021 WL 5872883, at \*1; see also State v. Hernandez, 251 N.J. 198 (2022) (denying certification).

Afterwards, the man tried to get back the money he had been arrested with.  See Complaint ¶¶ 105, 109.

The money (or at least some of it, see id. ¶ 91) had been transferred by the municipal police who made the arrest into a "Seized Asset Trust Account."  See id.  This account ("Trust Account") belongs to a county prosecutor's office.[3]  See id.

Accordingly, the man asked the county prosecutor's office for the money.  See id. at ¶¶ 108-09. The office agreed --- but only if the man agreed to walk away from any legal claims he might have related to his arrest.  See id. at ¶ 110.

---

[1]  The police officers worked for the Lyndhurst Police Department.  See Complaint ¶¶ 4-5.

[2]  Orlando A. Hernandez.

[3]  The Bergen County Prosecutor's Office.  Two notes.  First, Lyndhurst, see footnote 1, is a township in Bergen County. (Lyndhurst has around 22,000 people; Bergen County has about 950,000.)  Second, there are no allegations as to when the money was transferred into the Trust Account.

2

The man said no to the condition, and the prosecutor's office kept the money.  See id. at ¶¶ 112-13.

### B. The Lawsuit

In light of the above, the man (from here, the "Plaintiff") sued, among others, the county prosecutor's office (the "Defendant").

The Plaintiff pressed federal claims (under 42 U.S.C. ¶¶ 1981, 1983, 1985, 1986, and 1988) and a state claim (under the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2).  See Complaint ¶ 1.

The theory: the Defendant violated the Plaintiff's rights by not returning the money.  See id. at ¶¶ 115-17.

### C. The Motion

The Defendant now moves to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6).

The motion presses three arguments.

First, that the Defendant has absolute immunity from the lawsuit.  Second, that the Defendant is not covered by the statutes invoked by the Plaintiff.  And third, that the Plaintiff's complaint is defective.

The Court ticks through these arguments below, in Part II, Part III, and Part IV, and concludes that they are not persuasive.

The Defendant's motion is therefore denied.

## II. Absolute Immunity

Prosecutors sometimes have absolute immunity, see generally Imbler v. Pachtman, 424 U.S. 409 (1976), and the Defendant's first argument is that it is entitled to that immunity here.  See Motion to Dismiss at 16-20.[4]

---

[4] The Defendant, as noted, is a county prosecutor's office.  For its absolute-immunity argument, the Defendant cites only cases that speak to absolute immunity as it might be claimed by individual prosecutors.  See Motion to Dismiss at 16-20 (citing Imbler, 424 U.S. at 409); Kulwicki v. Dawson, 969 F.2d 1454 (3d Cir. 1992); Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008)).  For the purposes of this Opinion and Order, the Court assumes

Take this argument up below, as to the Plaintiff's federal claims, see Part II.A, and then as to his state claim, see Part II.B.

### A. Federal Claims

Prosecutors, as noted, are sometimes absolutely immune from being sued.

This is not based on who they are, but on what they do in a given circumstance.  See generally Kalina v. Fletcher, 522 U.S. 118, 127 (1997); Mireles v. Waco, 502 U.S. 9, 13 (1991); Forrester v. White, 484 U.S. 219, 229 (1988).

The law here in a nutshell:

A prosecutor can claim absolute immunity for "initiating a prosecution and . . . presenting the State's case."  Burns v. Reed, 500 U.S. 478, 486 (1991).  But "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

The Court considers how these general principles apply here, see Part II.A.1, and then looks to the governing case law, see Part II.A.2 --- and concludes the Defendant has not shown that it gets absolute immunity.

### 1. Analysis

Apply now the principles set out just above to this case.  In doing so, move through three points.  Each weighs against absolute immunity.

*    *    *

The first point.

The Plaintiff has sued the Defendant for declining to make a payout from the Trust Account.  See Complaint ¶ 91.

---

arguendo that this crossover works --- that absolute immunity for prosecutor's offices can be viable as a general matter, and is governed by the same legal standards as absolute immunity for individual prosecutors.

4

But this has nothing to do with "initiating a prosecution," Burns, 500 U.S. at 486, against the Plaintiff. That prosecution started and ended years ago. See Complaint ¶¶ 99-100.

Nor is there any suggestion that holding back the money was linked, even roughly, to "presenting . . . [a] case," Burns, 500 U.S. at 486, against another person --- a co-conspirator, for example, as to whom the cash might be evidence.

Safeguarding evidence with appropriate chain of custody in the run-up to a trial may have a tight-enough tie to "presenting the States's case" so that absolute immunity is warranted. Cf. Buckley, 509 U.S. at 276 n.7.

But managing payouts from the Trust Account long after any criminal case is over and done with --- this has no meaningful link to mounting a prosecution.

*   *   *

The second point: there is affirmative reason to think that managing the Trust Account should be chalked up as an "administrative" task. See generally id. at 273 ("[a] prosecutor's administrative duties . . . are not entitled to absolute immunity").

On the Plaintiff's allegations, the Trust Account is something between an actual bank account held by the Defendant and an accounting entry on its financial ledgers. See Complaint ¶ 91. Cash collected by police in (smaller) towns is allegedly moved into the (larger) county's Trust Account, presumably for convenience, safekeeping, and efficient record-keeping. See id.; see also footnote 3.

Managing such an account is bread-and-butter administrative work.

To see the point, start by imagining a car company and then listing out some of its employees' work tasks.

First, the company's employees design and manufacture new cars, transport them to lots, and sell them.

And second, the car company's employees do a range of others things. They handle HR issues related to hiring and firing engineers. They register to do business in every state where the company has a factory. They negotiate lease renewals for

5

the home office, buy insurance, and work to get the accounting right for the employee-pension plan.

The tasks in the first category are not administrative, and the tasks in the second category are.

Articulating precisely why is tricky.

But this much is clear: the tasks in the administrative category are fundamentally support tasks. They help with the company's main work of making cars. But they are not a direct part of that work itself --- to the point that the administrative work (buying insurance, handling HR, etc.) leans on different workplace skills and experiences than the company's non-administrative work (designing and building cars). See generally Administrative, adj., sense 1, Oxford English Dictionary (2024) (noting the word is used "frequently with the suggestion of subordinate or ancillary work").

Here, the main work of the Defendant, a county prosecutor's office, is fighting crime. When prosecutors seek search warrants, question witnesses at trial, or advocate at sentencing --- this work is not administrative, and no one would think otherwise. It is at the heart of what a prosecutor's office does. See generally Weimer v. Cnty. of Fayette, 972 F.3d 177, 189 (3d Cir. 2020); Munchinski v. Solomon, 618 F. App'x 150, 154 (3d Cir. 2015); Yarris v. Cnty. of Delaware, 465 F.3d 129, 139 (3d Cir. 2006).

Managing the Trust Account is far away from all of this. It may help in various ways to support the Defendant's core work of investigating and prosecuting crime. But it is not itself a direct part of that work --- and indeed the Third Circuit has noted that the management of seized property is often handled by non-prosecutors. See Schrob v. Catterson, 948 F.2d 1402, 1419 (3d Cir. 1991).[5]

In short: managing the Trust Account, including the decision not to pay the Plaintiff from it, is administrative.

\* \* \*

---

[5] And per the Third Circuit, that is another reason not to absolutely immunize the people who handle seized property, see Schrob, 948 F.2d at 1419 --- even if in a given workplace those people happen to be prosecutors.

6

Take now a _third_ point.

Prosecutors often get absolute immunity for tasks that are bound up with the judicial process.  See Burns, 500 U.S. at 492; Forrester, 484 U.S. at 226; Briscoe v. LaHue, 460 U.S. 325, 334-35 (1983); Butz v. Economou, 438 U.S. 478, 512 (1978); Imbler, 424 U.S. at 430; see generally Gardner v. Twp. of Springfield, 2024 WL 4252731, at *3 n.5 (D.N.J. Sept. 20, 2024).

A prosecutor who applies to a judge for a search warrant gets absolute immunity.  See Van de Kamp v. Goldstein, 555 U.S. 335, 343 (2009).  So does a prosecutor who appears before a judge for trial.  See Imbler, 424 U.S. at 431.

But here, no court is on the scene.  Deciding whether to make a payout from the Trust Account is not alleged to require pre-approval from a judge, or any court involvement.  Under the case law, this lack of judicial involvement on the front-end is a reason not to allow an invocation of absolute immunity, which prevents judicial review on the back-end.  See Burns, 500 U.S. at 492; Mitchell v. Forsyth, 472 U.S. 511, 522-23 (1985); Butz, 438 U.S. 478, 512 (1978); King v. Deputy Atty. Gen. Del., 616 F. App'x 491, 497 n.6 (3d Cir. 2015); Giuffre v. Bissell, 31 F.3d 1241, 1252-54 (3d Cir. 1994); Davis v. Grusemeyer, 996 F.2d 617, 630 n.27 (3d Cir. 1993); Kulwicki, 969 F.2d at 1464; Schrob, 948 F.2d at 1410-11, 1416; see generally Gardner, 2024 WL 4252731, at *3 n.5.

* * *

Where things stand:

First, managing the Trust Account is remote from mounting a prosecution.

Second, it affirmatively appears to be administrative.

And third, it has no direct link to the judicial process.

All of these point in the same direction: deciding not to make a payout from the Trust Account here, long after the relevant criminal prosecution has run its course, is not covered by absolute immunity.

## 2. Case Law

The conclusion set out just above is backed up by the cases.

The stepping-off point is Schrob v. Catterson, 948 F.2d 1402 (3d Cir. 1991).

There, a prosecutor helped to effect the seizure of a company, based on information that suggested a link to drug trafficking. See id. at 1405-06.  The company's owner later convinced the prosecutor that the company was legitimate enough.  See id.  But the prosecutor held onot control of the company, in part because he wanted "a release from personal liability for his actions related to the seizure."  Id. at 1406.

The Third Circuit's holding in Schrob: "management of and negotiations concerning return of the property" were not covered by absolute immunity, because the prosecutor "was acting in an administrative role."  Id. at 1419.

This holding is all-but directly on point, and it means the Defendant is not absolutely immune here.

                        *    *    *

Against this conclusion, the Defendant tries to sidestep Schrob.  But its arguments do not work.

First, the Defendant suggests Schrob is different because it involved a prosecutor, not a prosecutor's office.  See Reply Brief at 11-12.

But the Defendant cannot have it both ways.

It cannot argue that prosecutor's offices get absolute immunity because prosecutors do, see footnote 4 --- but then walk away from the analogy when it begins to imply that a particular prosecutor's office does not get absolute immunity.

The prosecutor/prosecutor's office analogy either works (in which case there can generally be absolute immunity for prosecutor's offices, just not here) or the analogy does not work (in which case the Defendant has not explained why prosecutor's offices might get absolute immunity in the first place).

Maybe there is a reason to mix and match.  But the Defendant does not say what that reason might be.  And that is fatal to its argument --- after all, showing an entitlement to absolute immunity is the Defendant's "heavy burden."  Light v. Haws, 472 F.3d 74, 80-81 (3d Cir. 2007).

8

As a second way to try to evade Schrob, the Defendant implies (but does not say) that the case may not govern here because it involved a civil seizure; by contrast, the seizure here was criminal, part of an arrest. See Reply Brief at 8.

But the Third Circuit in Schrob rejected that distinction, holding that "absolute immunity is extended to officials when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action." Schrob, 948 F.2d at 1411.

Bottom line: Schrob controls here.

Schrob establishes that "the official behavior challenged," id. at 1409 --- the Defendant's decision not to hand back money to the Plaintiff --- is not shielded by absolute immunity.

\*   \*   \*

And before moving on, note that Schrob is no outlier.

Numerous Third Circuit decisions go the same way. See, e.g., Forchion v. City of Trenton, 2022 WL 16629922, at \*1 n.2, \*2 (3d Cir. Nov. 2, 2022) (rejecting as "groundless" an argument for absolute immunity for prosecutor's role in the disposition of seized vehicles); Wrench Transp. Sys., Inc. v. Bradley, 212 F. App'x 92, 95, 98 (3d Cir. 2006) (no absolute immunity where prosecutors delayed returning property to get a release); Giuffre, 31 F.3d at 1253 (no absolute immunity where prosecutor advised investigators on agreement whereby a defendant would forfeit property to county in exchange for dismissal of drug charges); cf. Reitz v. Cnty. of Bucks, 125 F.3d 139, 146 (3d Cir. 1997).

And so do decisions from around the country. See, e.g., Mendenhall v. Goldsmith, 59 F.3d 685, 692 n.11 (7th Cir. 1995) (collecting cases from various circuits, each along the same lines).

### B. The State Claim

The Plaintiff, as noted, has also pressed a state-law claim. See Complaint ¶¶ 198-205. And in its motion to dismiss, the Defendant says absolute immunity cuts that claim off, too. See Motion to Dismiss at 20.

Not so.

The Defendant has not cleared the bar for absolute immunity on the federal claims, including those under § 1983. See Part II.A.

And this means it also comes up short as to absolute immunity from the New Jersey Civil Rights Act claim. The reason: "Given the similarity between the [New Jersey] Civil Rights Act and section 1983, on which [New Jersey's] Act was modeled, [New Jersey] courts apply section 1983 immunity doctrines to claims arising under the Civil Rights Act." Bovery v. Monmouth Cnty. Prosecutor's Off., 2020 WL 5544108, at *4 (N.J. Super. Ct. App. Div. Sept. 16, 2020) (citing Gormley v. Wood-El, 218 N.J. 72, 113 (2014)).

\*   \*   \*

In short: the Defendant has not established that it is entitled to absolute immunity on either the federal claims or the state claim.

### III.  "Person"

The Defendant's next argument: it cannot be sued under the statutes the Plaintiff cites, because those allow for lawsuits against only a "person," and the Defendant, a county prosecutor's office, is not that. See Motion to Dismiss at 11.

To evaluate this argument, start with three legal principles.

The first legal principle: the Plaintiff's federal cause of action under § 1983 applies only against a "person." See 42 U.S.C. § 1983. So too with the Plaintiff's causes of action under § 1985, § 1986, and the New Jersey Civil Rights Act. See N.J. Stat. Ann. § 10:6-2.[6]

---

[6]  The Defendant makes the same personhood argument about the Plaintiff's causes of action under §§ 1981 and 1988. But it provides no authority for the idea that these sections apply only against persons. See Motion to Dismiss at 11–16. The Defendant's reading does not follow in an obvious way from the statutory text, and the only cited case says nothing about the matter one way or the other. See id. at 13 (citing Wilcher v. Gain, 311 F. Supp. 754, 755 (N.D. Cal. 1970)). The Defendant, who seeks dismissal here, has not borne its burden as to these counts on its "person" argument. See generally Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

10

The second legal principle here: the definition of "person" as developed by courts under § 1983 is the same definition used for §§ 1985 and 1986, see N.J. Chinese Cmty. Ctr. v. McAleer, 2022 WL 3403297, at *7 (D.N.J. Aug. 15, 2022) (collecting cases), and the New Jersey Civil Rights Act.  See Mervilus v. Union Cnty., 73 F.4th 185, 193 n.4 (3d Cir. 2023); Roberts v. N.J. Tpk. Auth., 2016 WL 6407276, at *5 (N.J. Super. Ct. App. Div. Oct. 31, 2016).

This means the definition of a § 1983 "person" is doubly critical here.  For determining whether the Defendant can be sued under § 1983, and also whether the Defendant can be sued under the other statutes invoked here by the Plaintiff --- §§ 1985 and 1986 and N.J. Stat. Ann. § 10:6-2.

Take now the third and final legal principle, as to what counts as a "person" under § 1983 (and, by implication, §§ 1985 and 1986 and the New Jersey Civil Rights Act).

The legal principle: a state is not a § 1983 "person," see Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989), but "[l]ocal governmental bodies" are.  See Est. of Lagano v. Bergen Cnty. Prosecutor's Off., 769 F.3d 850, 854 (3d Cir. 2014) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978)).

\*   \*   \*

Against this backdrop, come back now to this case.

Does the Defendant, a New Jersey county prosecutor's office, count as (a) a state or (b) a local governmental body?

As with absolute immunity, see Part II.A, the answer does not depend on what the Defendant is in some abstract sense --- but rather on what the Defendant allegedly did.

One end of the spectrum: if what a New Jersey county prosecutor's office was doing was a "classic law enforcement and investigative function[]," Est. of Lagano, 769 F.3d at 855, the office was operating as an agent of the state.  Therefore, it was not a § 1983 "person," and could not be sued under either that statute or any of the others that piggyback on it here. See id.; see also Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996) ("It is well established that when county prosecutors execute their sworn duties to enforce the law by making use of

11

all the tools lawfully available to them to combat crime, they act as agents of the State.").

On the flip side: if a New Jersey county prosecutor's office was carrying out an "administrative function[]," Est. of Lagano, 769 F.3d at 855, the office was not an agent of the state --- it was, rather, acting as a local governmental body and therefore could be sued under § 1983 and the other statutes in play here. See id. at 854.

\* \* \*

How to go about deciding whether certain actions of a New Jersey county prosecutor's office should be put in the first category ("classic law enforcement and investigative functions") or the second ("administrative functions")?

Sometimes, the Third Circuit has suggested that the answer to this question runs through a very close-to-the-ground look at state law, to determine how a particular action might best be classified under the state constitution, statutes, and case law. See Coleman, 87 F.3d at 1499–1506 (analyzing New Jersey law at length as to the division of public power between the state and counties, among other things).

On other occasions, the Third Circuit has suggested a somewhat different approach.  On this approach, state law has an initial role to play in setting up the overarching framework --- under New Jersey law, "classic law enforcement . . . functions" are actions of the state, while "administrative functions" are the actions pf the local government.[7]  But after that, the real work

---

[7] Why does this initial framework run through state law?  One possible answer: under some states' laws the power of a county prosecutor's office to enforce the criminal law is the state's, while elsewhere that power is local.  Compare Coleman, 87 F.3d at 1499 with Myers v. Cnty. of Orange, 157 F.3d 66, 76 (2d Cir. 1998).  In the first group, criminal law-enforcement actions count as state actions; in the second, they count as local actions.  (To be sure, without recourse to state law, it is possible to mark a boundary between local government actions attributed to the state and those that are not attributed to the state.  Federal common law might do all of the work, for example.  And note that around the time § 1983 was passed, "general law" often had a role to play.  See, e.g., Fred Smith, Local Sovereign Immunity, 116 Colum. L. Rev. 409, 424-30 (2016) (discussing cases, many of which are best understood as

12

of divvying things up --- which category does a given act fall into? --- is not answered by a deep dive into the nitty-gritty details of state law.  Rather, the sorting is done in a more conceptual way --- by comparing (a) the alleged action to (b) what is taken as a matter of common understanding to count as a "classic law enforcement . . . function[]."  See Est. of Lagano, 769 F.3d at 855-56 (analyzing an action based on what does or does not look like "classic law enforcement . . . functions" as a practical matter --- and in doing so, citing no New Jersey law).

These two approaches may be in tension with each other.[8]

---

proceeding on a general law basis); see generally Will, 491 U.S. at 67 (noting importance of late 19th-century common-law understandings to contemporary interpretation of the § 1983 meaning of "person").

[8] Or maybe not.  Take here one potential way of reconciling any possible tension between Estate of Lagano and Coleman.  In the mine run of cases, it is straightforward enough to know whether a given action involves "classic law enforcement functions." "[C]lassic[s]" are by definition solidly established; the baseline is well and widely understood --- there is therefore no need to dive into the deep end of state law to seek out an added dollop of clarity as to what counts as a "classic law enforcement function[]."  And that is perhaps why the Third Circuit in Estate of Lagano simply eyeballed the actions at issue and briskly determined whether they amounted to "law enforcement functions."  See Estate of Lagano, 769 F.3d at 854-56.  But if an action is not a law-enforcement function, it is "administrative" --- and at that point, things can get murkier. After all, calling something "administrative" matters because it suggests that the action might be attributed to a local government and not the state.  See 769 F.3d at 855.  But attribution can be thorny.  State and local governments may have a wide variety of complicated, obscure, and/or non-intuitive ways of splitting up administrative authority between them. This means that the kind of bare, standalone common-sense that could generate a solid answer to the first question (is this a law enforcement function?) might not be enough to reliably answer the second question (whose administrative function is this?).  Now add all this up.  Everyday practical sense, as used by the Third Circuit in Estate of Lagano, can readily answer the first question --- is this a "classic law enforcement function[]"? --- without any need to lean on state law.  But if the answer to that question is no, then another question moves

13

But there is no need, here, to get to the bottom of the issue.

This is because the Defendant, which has the burden, see Gould Elecs. Inc., 220 F.3d at 178, has not, in the relevant parts of its briefs, pointed to any New Jersey cases or statutes. See Motion to Dismiss at 11-16; Reply Brief at 5-9.

Accordingly, the Defendant has not angled the Court in the direction of the first of the two approaches sketched out above.

Rather, the Defendant has implicitly invited the Court to take the second approach --- the practical-minded Estate of Lagano approach, which does not turn on a close analysis of state law. See Motion to Dismiss at 11-16; Reply Brief at 5-9.

The Court will follow the Defendant's lead. Cf. Shaw v. Hunt, 517 U.S. 899, 915 (1996); R.A.V. v. City of St. Paul, 505 U.S. 377, 381 (1992); Maryland v. Macon, 472 U.S. 463, 471 (1985); see generally Wu v. GSX Techedu Inc., 738 F. Supp. 3d 527, 559-560 (D.N.J. 2024) (describing the party-presentation principle).

But for the Defendant, this opens the way to a dead end, as set out just below.

\* \* \*

The challenged action here, as noted, is the Defendant's decision not to hand over money from the Trust Account long after the underlying criminal investigation has ended. See Complaint ¶¶ 99-100.

In the absolute-immunity context, courts around the Nation have essentially held that taking such an action is an "administrative function," and cannot be chalked up as "initiating a prosecution and . . . presenting the State's case." See Part II.A (mustering cases).

---

onto the table: whose "administrative" action is this, state or local?  As to that question, common-sense may not always be a sure guidepost --- and there may therefore be a need to dig into state law, as the Third Circuit did in Coleman, see 87 F.3d at 1499-1506, to see whether a given administrative task is allocated to the state or a local body.  On this possible read, there may not be tension between the method of Estate of Lagano and the method of Coleman; rather, each case may have been using the method that is best suited to the question it was asking.

14

It is hard to know why this Court should now land on what is all-but the opposite conclusion --- that the challenged action is <u>not</u> an "administrative function," but a "classic law enforcement function[]."

Why would not returning money long after a prosecution count as an "administrative function" for the absolute-immunity doctrine (as many courts have held) but not count for the purposes of § 1983 personhood?[9]

\*   \*   \*

In sum, the Defendant was acting here as an administrator, not a law enforcer.  That means it was operating as an agent of the county, not the state.  It is therefore a "person" amenable to suit under § 1983 and the Plaintiff's other relevant causes of action.

## IV.  Defects in the Complaint

The Defendant also argues that the Plaintiff's Complaint should be dismissed because it is conclusory.  <u>See</u> Motion to Dismiss at 8–11.

But even a quick glance at the Complaint turns up detailed-enough allegations.  For example, the Plaintiff alleges that the Defendant took possession of $1,720 of his cash and agreed to return it only if released from possible legal claims.  <u>See</u> Complaint ¶¶ 108–11.

The Defendant also argues that the Court must dismiss the Plaintiff's claims because he "fail[s] to allege any individual personal involvement by any [Defendant] employee."  Motion to Dismiss at 11.

But this argument is based entirely on cases in which an <u>individual</u> is sued.  <u>See</u> Motion to Dismiss at 10–11 (citing <u>Evancho</u> v. <u>Fisher</u>, 423 F.3d 347 (3d Cir. 2005) (against attorney general); <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662 (2009) (attorney general and FBI director); <u>Innis</u> v. <u>Wilson</u>, 334 F. App'x 454 (3d Cir. 2009) (prison officials); <u>Rode</u> v. <u>Dellarciprete</u>, 845 F.2d

---

[9] One possible answer: absolute immunity does not turn on a close look to state law, but the law as to who is a "person" does.  But regardless of whether that answer might sometimes move the needle, the Defendant has not opted to make any argument along these state-law lines, as noted in the text.

15

1195, 1207 (3d Cir. 1988) (governor and attorney general); Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 290 (3d Cir. 2018) (police officers); Saisi v. Murray, 822 F. App'x 47 (3d Cir. 2020) (various officials)).

Different considerations are in play where, as here, a governmental entity is sued. See, e.g., Mervilus, 73 F.4th at 196 (a county "can be held liable under Monell, even when its officers are not"; and "it is possible for the Monell defendant to cause constitutional harm without any individual defendant violating the plaintiff's rights"); Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (holding that a plaintiff bringing certain municipal-liability claims "does not need to identify a responsible decisionmaker in his pleadings").

The Defendant does not tackle any of this. It does not explain the ways in which personal involvement may be necessary when the party sued is a governmental entity, and the ways in which those standards might not be met here. It is for the Defendant to make these sorts of arguments. See Gould Elecs. Inc., 220 F.3d at 178. Having failed to do so, the Defendant has not carried its burden on this part of its motion to dismiss.

## V.   Conclusion

The motion to dismiss is denied.[10]

IT IS on this 10th day of February, 2025, **SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.

---

[10] In its reply brief, the Defendant raises a set of issues for the first time --- as to the statute of limitations, for example, and as to an apparent forfeiture order. See Reply Brief at 4-5, 14-15. The time for raising these arguments was in the opening brief. See generally In re Pazzo Pazzo Inc., 2022 WL 17690158, at *3 (3d Cir. Dec. 15, 2022). The Court will not consider these arguments here.